Laubie, J.
This is a proceeding in error brought to reverse the judgment of the’ court below, rendered in an action wherein Pollock was plaintiff, and the plaintiffs in error were defendants.
The petition in the court below alleges substantially that the defendants, by certain parties, their agents, unlawfully and with force entered the plaintiff’s premises, on the 25th day of February, 1890, and rudely and unlawfully forced themselves up the stairs of the dwelling-house of the plaintiff, and removed certain articles of furniture, named in the petition, belonging to the plaintiff, and converted the same to *186 their own use; and alleging the value of the articles to be $80, and asking to recover judgment for the sum of $200 as damages therefor. The defendants in their answer allege that they had sold the furniture to the plaintiff, for the sum of $104, payable in monthly installments of $10 each, to secure which plaintiff had executed to them a chattel mortgage of the furniture; that such mortgage provided, if any installment should remain due and unpaid for over ten days, the mortgagees might take possession of the property and sell the same at public or private sale, and apply the proceeds to the discharge of the debt, and pay any excess there might be over to Pollock; and that, in pursuance thereof, the mortgage being over-due and the amount unpaid to the extent of $43, they entered the premises peaceably, and took possession of the property, and sold it and applied the proceeds, which were less than the debt, toward the payment thereof; and they deny all the other allegations in the petition. The plaintiff in reply alleges that the mortgage was obtained from him under false representations and fraud on the part of the defendants; that he did not know the contents therepf at the time he signed it, and that the giving of the instrument was simply a ruse or scheme to get rid of the laws of Ohio in regard to the conditional sale of persona] property. There was nothing in the evidence in .regard to these matters, so that no attention need' be paid to them.
The first question presented to us for consideration, is as to the rule of damages which the court gave the jury, which reads as follows:
“ If you find further from the evidence that the defendants, by their agents, in the taking of this property, took it in such manner as was not peaceable and reasonable, and, in ‘ addition to not acting in a reasonable and peaceable manner, acted from a wanton or malignant spirit, and with a corrupt and wicked design, you may, in addition to compensatory damages, allow damages in such sum as you may deem reasonable, by way of punishment for such malignant or wicked spirit, and wanton *187 or violent conduct, if you find it to exist. I do not say that if you find these facts to exist, you shall allow punitive damages, or that you must allow such damages; I say you may, if you find such to be the facts, and deem it just and reasonable to do so.”
That is the first exception to the charge, and the second and last is to “that portion, and only that portion thereof, which reads as follows : ”
“ And that they have not given plaintiff credit on his said indebtedness for his said property, so taken, or any part of it,” which seems to present nothing for consideration, and need not be noticed further.
We think the court erred in allowing the jury to award damages for acts of defendants arising from a wanton or malignant spirit, and with a corrupt and wicked design, and by way of punishment, in addition to compensatory damages» There was no allegation in the petition to justify this charge. When a party cannot bring himself up to the point of charging another with bad motives, a wicked design and malignant spirit in doing the act complained of, certainly the court ought not do it for him, and submit to the jury questions in regard thereto, in order to justify the awarding of punitive damages, to the plaintiff.
We do not dispute the proposition that there are cases, as for instance assault and battery, wherein a party may recover punitive damages, although he does not declare for them in the petition, because they are involved in the nature of the charge itself; and it may be that a party might be entitled to recover exemplary damages under circumstances as charged in this petition ; but here the court predicates the right to recover exemplary damages, not upon the proposition I am referring to, of an excessive use of force, but solely upon the ground that the evidence has shown that the parties acted from a wanton, corrupt, wicked and malignant spirit and design. While there is testimony tending to show that they did act violently, there is none to show that they acted with *188 any corrupt, wanton or malignant spirit and design, and, as already stated, there is nothing in the petition which charges any such design, spirit or motive. The court in thus submitting this proposition to the jury, would give the jury to understand that there was evidence which would authorize them to find that the parties had acted under and by virtue of such spirit, motive and design in taking the goods, and therefore they might inflict upon the defendants punitive damages. Further, in regard to this part of the charge: What were the compensatory damages which the court instructed the jury they might assess ? Those damages, according to the charge, were the value of the property taken. And the question Avhether this was the true measure of damages, comes before us for examination, notwithstanding there was no special exception to that portion of the. charge. It is assigned for error that the verdict was contrary to the evidence and the law, and all the evidence being spread upon the record, and all of the charge, if we find in the charge matters which were misleading to the jury and not good law, and but for which the verdict would have been different, then the case should be reversed. The Avhole charge upon this point is as follows:
“ If you find from the evidence that the defendants, by their agents, took said property at the time stated, in good faith, in a peaceable and reasonable manner, and in the belief that they had a right to take it under said chattel mortgage, and that in the taking of it they did not act in a wanton or wicked’ spirit, or with a corrupt or wicked design, then the defendants would not be liable, and your verdict should be for them. But if you find from the evidence that the defendants, by their agents, in the taking of this property, acted in a rude and violent manner, and did not act in a peaceable and reasonable manner, and that they have not given plaintiff credit on his said indebtedness for his said property so taken on any part of it, then the plaintiff would be entitled to recover, and he would be entitled to recover at least compensatory damages.” “ The measure of these damages would be the value of this property *189 at the time it was so taken, with interest from that date. Yon may look at all the testimony in the case to see what the truth in these respects is. You are the triers of this case. You are to determine the facts. It is your province to weigh the testimony.”
Now under the circumstances disclosed by the evidence, would the plaintiff be entitled to recover the value of this property at the time it was taken, and with interest ? There was no dispute that the note and mortgage were given; there was no dispute that the title of the mortgagees had become absolute by reason of default; there was no dispute that the mortgage contained the provision that the mortgagees, upon default, might take possession of the property and sell the same, and that they did take possession, claiming to do so under and by virtue of the provisions of the mortgage. The charge was predicated upon those facts, and the additional fact to be found by the jury, that the parties had taken the property in a rude and violent manner, and which, if so found, entitled the plaintiff to recover its value, and interest.
It was stated that counsel for the defendant in error would submit some authorities on this proposition, but none has been submitted, and we have not been able to find any which will justify this charge. The court evidently was misled by cases which hold that a mortgagee has no right, by a commission of a breach of the peace, or in a violent manner, to take possession of the property mortgaged, and, reasoning from that, we presume the learned judge below concluded that if he had no right to take them, that he was bound to either return them or their value. But such is not the law. The title to the property vested absolutely in the mortgagees. There was nothing left in the mortgagor save the equity of redemption, or the excess of the value of the property over and above the mortgage debt; and by redemption he might obtain the goods themselves; but his interest in the goods was nothing except the excess over the mortgage debt. All that the plaintiff owned, therefore, was the equity of redemption, or the excess *190 in value of the goods over the debt. Under what principle of law could he be entitled to recover more than he owned, unless by way of punitive damages for some act committed at the time, to which the law would attach such punishment ? In Jones on Chattel Mortgages, section 437, it is said : “ But a mortgagee is liable in trespass or trover to a mortgagor for wrongfully disturbing the latter’s possession. Thus, a mortgagor, who has by the terms of the mortgage, the right to remain in possession until default, may maintain trover or trespass against the mortgagee if he disturbs his possession before default. Th,e measure of damages in such case is the value of the right of possession until forfeiture of the condition of the mortgage, and the value of the property after payment of the mortgage debt. In case a mortgagee unlawfully takes possession of the mortgaged goods after they have been lawfully attached by a creditor of the morgagor, the rule of damages in replevin by the sheriff is the value of the property over and above the mortgage debt.” Quite a number of authorities, are cited in support of these propositions, and none are referred to in opposition.
Here the property was not taken until after default, when the absolute title vested in the mortgagees, and whatever damages the plaintiff would be entitled to recover as compensation, could not possibly be more than his interest in the goods, the excess of value over the debt; and if the cash value did not equal the debt, then there could be no recovery by way of compensation for the mere taking of the goods. This matter, or any proposition in the case, is not at all affected by the other question suggested, that the defendants sold the goods for less than their value, or that they sold them on credit and had not yet received the pay. It is entirely immaterial what they did with the goods, whether sold at public or private sale, whether sold for full value or less than value, because the only interest belonging to the mortgagor after default, when the mortgagee obtains possession of the goods is the equity of redemption, or excess of value, Ib., sec. 702, 705.
*191 The remaining question is: Was the plaintiff entitled to recover at all, under the evidence and the law ?
Upon this point we must look to the testimony, and it appears from that, that on the occasion in question, three parties, representing the plaintiffs in error, as their agents, were peaceably admitted in the house of the mortgagor Pollock, by his wife. Pollock was absent. Mr. 'Cool went first, for the reasons stated in the evidence, and he was admitted by the wife. The other two followed in a few minutes afterwards, and they were admitted peaceably; so there was no force or unlawful methods taken to get into the house itself. True, the plaintiff was not there, and they did not have his permission to enter, save as may be inferred form the terms of the mortgage; but they entered peaceably and lawfully, by reason of being thus admitted by the wife. Then followed a discussion of the question of what was due, or whether anything was due under the mortgage, between the wife and these parties, especially Mr. Cool, who was the auditor of, and authorized by, the plaintiffs in error to determine the amount due them. In that discussion the wife claimed that $62 or $69 of the $104 had been paid. She admitted that the whole amount had not been paid, but she made claim that the lounge and the window shades were defective, or not in good order when bought, and they were not going to keep them (although more than a year had passed since the purchase), and said that Cool might take those, but should not take any other part or portion of the goods. Mr. Cool claimed that the matter was not separable and divisible, and if the whole amount was not paid, he would take the goods. That was the dispute, and it may be noted too here that the first article described in the petition as having been taken from, and belonging to plaintiff' below, is this very lounge. After looking at her receipts, Mr. Cool offered to give longer time if part of the amount due was paid, but Mrs. Pollock declared that they would pay nothing more, and Mr. Cool threatened to go upstairs where the goods were and take them. When the furniture was bought, it had been *192 placed in the rear room of the second floor of plaintiff’s house, and there remained until taken on the occasion in question. As Mr. Cool attempted to .pass up the stairs to get where the goods were, Mrs. Pollock interposed and preceded him up the stairs, and standing at the head of the stairs she drew a revolver, which, as she swears, had one load in it, and threatened to shoot any person that came up there, or who undertook to take any of the goods except the lounge and the shades. She swears that Cool took hold of her arm, took the revolver from her, and put it in his pocket, and he says the same. She thereupon planted herself in the doorway leading into the back room where the property was, taking hold of the sides of the door, and holding herself in that position, and barring ingress to the room. She swears that at this time, while in the’ door, Mr. Cool struck her, and shoved her out of the way. The other witnesses swear that he did not strike her, and that he did not even put his hands on her; that one of the others engaged her in conversation, and while her attention was attracted to him, Mr. Cool attempted to slip by under her arm; that she discovered him before he got entirely in, and pressed up against his leg, and held him against the door jamb for a time, but finally the men got in and took the goods. It was a question for the jury to determine whether she was struck or not. There was testimony tending to show, and from which the jury might be justified in finding, that there was an excess of force used, and that she was unnecessarily struck and abused.
We must assume, therefore, this state of facts in looking at the question as to whether or not the plaintiff was entitled to recover. We must assume there was- testimony sufficient to authorize the jury in finding that an excess of force was used. Now, what is the law with reference to such state of facts?
The general rule is that a party may take possession of his property wherever he finds it, and that a license to enter another’s premises for that purpose, justifies the entry, where no unnecessary force is used, or injury committed. In a leading case, Sterling v. Warden, 51 N. H. 217, S. C. 12th *193 American Reports, 80, the authorities-, English and American, are examined upon this point, and commented on at length. In that case, the plaintiff had been postmaster in the town named; his term had expired, and Gilchrist had been appointed in his place. Plaintiff had kept the postoffice in a room of his dwelling-house. After his removal and the appointment of Gilchrist, Gilchrist and his assistant, the defendant in the case, proceeded to the house of the plaintiff to obtain the public property in the office. They were met by the wife of the plaintiff, and by himself, and refused admittance, and force was used to prevent their entrance. And thereupon the defendant, as he alleged, and his principal resisted that force, and .overcame it, and were compelled, in a light manner, to beat and strike the parties, bnt they used no more force than was necessary to overcome the force which was opposed to their entrance. It wTas held that under these circumstances, the incoming postmaster with his assistant, had an implied license to enter the premises of the plaintiff' for the purpose of-obtaining the property that was placed in his charge by the government, and that he was entitled to use sufficient force to accomplish that purpose, and was not liable for trespass. The court say upon the general rule: “ It is said that the law does not permit a man to assert his own rights or to redress his own wrongs by force, and as a general principle the proposition is sound and wholesome; but we think it is not always to be asserted and maintained, vigorously and without qualification;” and the court held that, under the circumstances, the defendant was not liable for trespass, not having used more force than was necessary; and, while he might be responsible under the criminal laws for a breach of the peace, yet, as between the parties themselves, there was no right of recovery upon the part of the plaintiff, because whatever injuries he sustained were brought upon himself by his own wrong, in wrongfully resisting the lawful entrance of the parties.
*194 In the case before us, while the servants of the plaintiffs in error might be responsible to the criminal law for a breach of the peace, the plaintiffs would not be responsible in damages at the suit of the mortgagor for taking possession of their own property, where no unnecessary force was used, and no actual combat took place, and where the contract impliedly gave them the right to enter the place where the property was kept to take it. Indeed, the court, in the case cited, go so far as to hold that this would be the result, even where an excess of force was used, but we do not think proper to go that length.
It is quite probable, and we concede that if the parties used an excess of force, if they struck this woman when it was unnecessary to strike her, that, to the extent of the excess of force thus used, there might be a recovery, upon her part at least; and this too upon principle, and as growing out of the facts and circumstances of the case. Upon principle, because a party ought not to be permitted to justify himself against an excess of force. True, the law ought not, perhaps, under such circumstances, to weigh the matter in golden scales, but if it be shown that the party did clearly use an excess of force, disproportionate to the circumstances and to the emergency, that he struck when there was no necessity for striking, he ought not to be permitted to justify himself on the plea that he was in the pursuit of his own goods. And upon the facts, because, while the absolute title to the property was vested, upon default, in the mortgagees, and though they were entitled to take it under the provisions of the mortgage, yet, after all, the property in their hands was a mere pledge for the debt, and there was left in it a lawful and rightful interest in the mortgagor, who had the right to recover the precise property itself upon payment of the debt, and it might well be held that for any unnecessary and excessive force used, the mortgagees should be regarded as trespassers, and damages awarded against them therefor. This then, together with the excess of value of the property over the motgage debt, if any, would be the *195 measure of damages the plaintiff would be entitled to recover in such a case.
We do not, however, undertake now to decide that Pollock could recover damages for a battery of his wife, nor that he could not recover if the parties had broken into his dwelling-house by force. We leave those propositions to be decided when they are made directly.
It may be said that this holding would encourage violence and breaches of the peace; but it must be remembered that the criminal law is fully competent to care for the peace of the State, and to punish and restrain such acts. We are dealing solely with private rights — the right of a mortgagor to recover of his mortgagee for such breach, arising out of his own forcible violation of an implied contract of license to such mortgagee to enter his premises and take the property mortgaged —a lincense coupled with an interest, as it were, that he may not rightfully revoke, — and his private rights in the premises ought not to be any the greater,’because that, in consequence of such violation, such mortgagee offended against the criminal laws of the state.
The mortgagor’s rights, in such case, are fully protected when a remedy is given him for all unnecessary force used against him — a force which his own wrongful conduct would not justify.
Even if an actual combat occurs, brought on by the mortgagor assaulting the mortgagee, we are at a loss to know upon what principle of law or right he should be entitled to recover of the mortgagee, where no excess of force was used by such mortgagee in repelling such assault. Such a case is not only unlike, but is the direct opposite of a cas'e where a party battles to retain possession of his own property against a wrongdoer.
We are not unmindful of the fact that a number of cases can be found where it was held that a mortgagee may not use force in taking possession of the mortgaged property, but must re *196 sort to his legal remedies, if the mortgagor refuses to give up possession, as we have heretofore noticed but the authorities are in conflict on this point, and we think we have followed the better rule upon principle as well as authority.
J. W. Morrison and W. H. Spence, for plaintiffs in error.
Hon. J. H. Wallace and Brookes & Purinton, for defendant in error.
The judgment of the court below will be reversed, and the cause remanded for a new trial.